Rose Rusman v. Commissioner.
Rusman v. Commissioner
Docket No. 111565.
United States Tax Court
1944 Tax Ct. Memo LEXIS 127; 3 T.C.M. (CCH) 922; T.C.M. (RIA) 44288; August 31, 1944
*127 I. Harry Goodley, Esq., for the petitioner. Earl C. Crouter, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This proceeding involves income tax deficiencies and penalties as follows: 50 percent
Year
Deficiency
penalty
1934
$ 333.36
$ 166.68
1935
1,122.03
561.02
1936
378.48
189.24
1937
915.12
457.56
1938
513.04
256.52
Totals
$3,262.03
$1,631.02 By an amended answer respondent asks that the deficiency and penalty for 1936 be increased from the amounts above set forth to $483.46 and $241.73, respectively. Respondent determined the deficiencies by adding to the income reported on petitioner's return for each taxable year an amount representing "unidentified bank deposits." This was the only adjustment made with respect to the taxable years 1935 and 1938. Other adjustments, minor in nature and amount, were made with respect to 1934, 1936 and 1937 income which are uncontested. The 50 percent penalty was imposed in accordance with the provisions of section 293 (b), Revenue Acts of 1934, 1936 and 1938. The issues are (1) whether respondent correctly determined petitioner's income tax liability by his analysis of her *128 bank accounts; (2) whether any part of the deficiency determined for each taxable year is due to fraud with intent to evade the payment of income tax; and (3) whether the deficiencies determined are barred by the statute of limitations. Findings of Fact The petitioner resides in Beverly Hills, California. Her individual income tax returns for the taxable years were filed with the collector of internal revenue for the sixth district at Los Angeles, California. During the taxable years she was engaged in the millinery business operating retail stores known as Byron's at 6504 1/2 Hollywood Boulevard and Modes Millinery at 6330 Hollywood Boulevard. During at least some of the taxable years she had an interest as an undisclosed principal in Dorothy Haber Millinery, a partnership engaged in manufacturing ladies' hats. Petitioner's returns for all of the taxable years except 1934 were prepared for her by a certified public accountant from the books and records of the two millinery stores and from material and information furnished by the taxpayer. The return for each of the taxable years reported a net loss from the operation of the two stores. Income from other sources resulted in net *129 taxable income for all years except 1934. The net losses of the two stores, the income from other sources principally one-half of the community net income and income from Dorothy Haber Millinery, the net income, and the total tax shown by the returns for each of the taxable years were as follows: 1934
1935
1936
1937
1938
Net loss
$4,667.65
$1,540.87
$ 742.19
$ 437.00
$2,406.48
Other income
3,230.83
4,775.72
4,708.56
4,111.37
Net income
loss
1,689.96
4,029.13
4,243.72
1,384.09
Total tax
none
10.84
99.16
102.90
49.83
Petitioner maintained various bank accounts during the taxable years. Some of these accounts were carried in her individual name, one each was carried in the name of the two millinery stores operated by her, and at least three different savings accounts were carried in the joint names of two of her sisters, Pauline London or Betty Byron. The Modes Millinery account and savings account #8567 in the names of "Pauline London or Betty Byron" were carried with the Bank of America. Savings account #8047 in the name of Rose Rusman and savings account #12011 in the names of "Pauline London or Betty Byron" were carried with the California *130 Bank. Rose Rusman's checking account, the Byron Millinery account, and savings account #119048 in the names of "Pauline London or Betty Byron" were carried with the Security-First National Bank. Savings account #8567 with the Bank of America and savings account #12011 with the California Bank were opened by petitioner for the purpose of secretly laying aside money to secure herself from her husband's gambling and as a "nest egg" in case she and her husband separated. The source of the deposits in account #8567 was the daily sales of the businesses operated by petitioner. From time to time and as daily sales warranted she withheld therefrom amounts which she accumulated and deposited. Such amounts were not reflected in the daily sales records nor the weekly summaries kept by petitioner and turned over to her accountants; nor were they reflected in her books of account which were used in making up her income tax returns. The source of all deposits in savings account #12011, which was opened in 1937, was small commissions that petitioner collected "from, not all, but some of the wholesale houses I was doing business with, for other accounts I was buying for." Savings account #119048 *131 was opened July 7, 1937, with an initial deposit of $188.33. Petitioner stated that the purpose of this account was to provide funds to pay a bonus that she had promised to her sister Betty Byron. The source of the deposits in this account was stated to be withdrawals from account #8567. Account #119048 was closed out in April 1939 at which time the balance therein was $813.82. The account shows one $10 withdrawal and deposits during 1937 of $510.96. Savings account #8047 was opened in 1934 with an initial deposit of $75. No additional deposits were made in this account. On April 10, 1939, the balance in the account of $81.55 was withdrawn by petitioner. The increase in the account represented annual accruals of interest. Petitioner's individual checking account was at the Hollywood and Cahuenga branch of the Security-First National Bank. She used this account for her general expenses and to pay her personal bills. In addition to her own funds she deposited therein amounts received from her sisters and her mother and father to pay their bills and sums that she borrowed from them. One deposit to this account on October 21, 1938, of $3,000 represented the repayment to petitioner of *132 amounts advanced by her to the Dorothy Haber partnership. The total annual deposits in the above seven accounts by taxable years, less inter-account transfers, and less items identified in the several accounts as being non-taxable, were determined by the respondent, after checking and investigating deposits in and withdrawals from the accounts, to be as follows: ROSE RUSMAN BANK ACCOUNTS 1934
1935
1936
1937
1938
Bank of America
"Modes Millinery"
$23,734.57
$24,783.18
$28,111.79
$24,323.42
$20,862.50
Savings #8567 "Pauline London or
Betty Byron
3,478.31
6,848.26
4,343.72
4,458.25
2,494.75
California Bank
Savings #8047, "Rose Rusman"
75.00
1.28
.76
2.32
1.59
Savings #12011, "Pauline London or
Betty Byron"
584.01
750.25
Security First-National Bank
"Rose Rusman"
6,546.21
7,489.14
4,590.10
9,382.08
11,196.10
"Byron Millinery"
33,740.61
32,926.97
34,449.35
35,062.10
25,151.26
Savings #119048, "Pauline London
or Betty Byron"
510.96
312.56
Total Deposits
$67,574.70
$72,048.83
$71,495.72
$74,323.14
$60,769.01
Less Transfers, etc.
17,175.00
17,115.00
17,680.50
20,667.00
15,836.04
Total Deposits less Transfers
$50,399.70
$54,933.83
$53,815.22
$53,656.14
$44,932.97
*133 The $3,000 deposit in Rose Rusman individual account on October 21, 1938, was not included in the $15,836.04 of "transfers, etc." excluded from 1938 deposits. The following table shows in Column 1 the total receipts, deductions and share of community property reported by petitioner on her income tax returns. Column 2 shows the total deposits less transfers etc. in the above seven accounts of the petitioner, the deductions claimed on the returns as adjusted by respondent, and the petitioner's share of community income as adjusted by the respondent, none of the adjustments being contested. Column 3 shows the differences between the amounts reported by petitioner and determined by respondent. ROSE RUSMAN Column 1
Column 2
Column 3
1934
Total Receipts
$39,323.60
$50,399.70 *
$11,076.10
Less Deductions per return
43,991.25
43,988.75
(2.50)
Profit or (Loss)
[4,667.65)
$ 6,410.95
$11,078.67
1935
Total Receipts
$41,403.43
$54,933.83 *
$13,530.40
Less Deductions per return
42,944.30
42,944.30
.00
Profit or (Loss)
[1,540.87)
$11,989.53
$13,530.40
1/2 of Community Income
3,230.83
3,230.83
.00
Total
$ 1,689.96
$15,220.36
$13,530.40
1936
Total Receipts
$47,645.34
$53,815.22 *
$ 6,169.88
Less Deductions per return
46,349.30
46,349.30
.00
Profit or (Loss)
$ 1,296.04
$ 7,465.92
$ 6,169.88
1/2 of Community Income
2,733.09
2,781.22
48.13
Total
$ 4,029.13
$10,247.14
$ 6,218.01
1937
Total Receipts
$43,945.87
$53,656.14 *
$ 9,710.27
Less Deductions per return
43,825.49
43,825.49
.00
Profit or (Loss)
$ 120.38
$ 9,830.65
$ 9,710.27
1/2 of Community Income
4,123.34
4,177.25
53.91
Total
$ 4,243.72
$14,007.90
$ 9,764.18
1938
Total Receipts
$36,166.50
$44,932.97 *
$ 8,766.47
Less Deductions per return
38,893.78
38,893.78
.00
Profit or (Loss)
[2,727.28)
$ 6,039.19
$ 8,766.47
1/2 of Community Income
4,111.37
4,111.37
.00
Total
$ 1,384.09
$10,150.56
$ 8,766.47
*134 Petitioner deliberately concealed a large amount of business income in her savings accounts and her books of account do not properly reflect her receipts. She failed to report the amounts so concealed in her income tax return for each of the taxable years. Her failure to report this income was fraudulent and she intended thereby to evade tax. No waivers were filed by petitioner with respect to the taxable years 1934, 1935 and 1936. Waivers expiring after the mailing of the notice of deficiency were filed by petitioner with respect to 1937 and 1938. Opinion The principal effort of the petitioner to overcome the prima facie correctness of respondent's determination of the deficiencies was directed toward identifying various deposits and withdrawals in the several accounts. We are persuaded by the evidence that respondent erred in failing to exclude as non-taxable the $3,000 deposit in Rose Rusman's individual checking account on October 21, 1938. This deposit was clearly a return of capital and it should be excluded from the 1938 taxable income. We are not persuaded by the evidence that respondent's determination of the deficiencies *135 herein is otherwise erroneous. Furthermore, it is our opinion that respondent's request for an increased deficiency and penalty for 1936 should be granted as the deficiency for that year was determined upon an adjusted net income of only $9,134.89, whereas the record before us convincingly establishes that her adjusted net income for 1936 was $10,247.14. Considering all the evidence, oral and documentary, we are convinced that petitioner intentionally withheld varying amounts from daily sales which were never recorded in her books of account, and that she failed to record on her books or report as income commissions received in 1937 and 1938. The evidence is clear that she knew the daily sales records and weekly summaries turned over by her to her accountant for the purpose of making entries on her books of account and making her income tax returns did not contain all the items of receipt of income for the respective years. In our findings of facts we have set forth in detail her methods of handling her business transactions whereby she concealed various items of income and no useful purpose would be served in repeating them here. The fact she took out of her business money to conceal *136 it from her husband and build up a "nest egg" for her own security if she and her husband separated, is no justification for not reporting it in her income tax returns. She concealed the withholding of portions of her daily receipts from her accountant even though he urged her to close out businesses which continued to show losses from year to year. Her accountant testified that petitioner's withholding of such sums from daily receipts was discussed subsequently in his presence without any denial on her part as to her actions. Petitioner's own statements coupled with her accountant's testimony convinces us that she intended to evade her tax liability, particularly where petitioner when faced with such evidence made no attempt to deny the correctness of the evidence accumulated against her. In view of all the facts and circumstances, we hold that respondent has sustained the burden of showing fraud in each taxable year and we approve the imposition of the fraud penalties. In view of our holding on the fraud question, it is unnecessary to discuss the statute of limitations issue. Decision will be entered under Rule 50. Footnotes
*. Total deposits less transfers, etc.↩